UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PERIMETER SOLUTIONS LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-cv-00617-AGF |
| | ) |
| THOMAS DAVIS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Perimeter Solutions, L.P. ("Perimeter") filed this action against its former employee, Defendant Thomas Davis, alleging that Davis breached his confidentiality agreement with Perimeter and misappropriated Perimeter's trade secrets after he was hired by Perimeter's competitor, non-party Fortress North America, LLC ("Fortress"). Perimeter seeks actual and punitive damages, as well as injunctive relief against Davis and those acting in concert with Davis to prevent further misappropriation of its trade secrets and confidential information.

The matter is now before the Court on Defendant Davis's motion (ECF No. 24) to dismiss Perimeter's first amended complaint. Davis argues that Perimeter has violated the rule against claim splitting because it has already sued Fortress for misappropriation of the same trade secrets, based on the same facts alleged here, in a case that is still pending in the Eastern District of California. Alternatively, Davis argues that Perimeter fails to state a claim against Davis for breach of contract or misappropriation of trade

secrets under federal or Missouri law.  For the reasons set forth below, the Court will grant Davis's motion based on the claim splitting doctrine and will dismiss this case without prejudice to Perimeter seeking to pursue its claims against Davis in its case pending in the Eastern District of California.

## BACKGROUND[1]

**Davis's Employment with Perimeter**

Perimeter is headquartered in St. Louis, Missouri and provides fire retardant products and related services.  A significant part of its business is the creation and sale of phosphate-based fire retardants that are dispersed aerially from aircraft to fight wildfires, largely in the western United States.  Perimeter's patented phosphate-based retardant is called "PHOS-CHECK."  Sales of aerial fire-retardant systems are based on government contracts.  A product must be approved by the U.S. Forest Service's National Technology and Development Program before it can be bought by the government for use as an aerial fire-retardant system. The process of getting a product added to the U.S. Forest Service's Qualified Product List ("QPL") is long and complicated.

Perimeter's PHOS-CHEK® fire retardants are the only phosphate-based aerial fire-retardant system approved by the U.S. Forest Service's National Technology and Development Program.  According to Perimeter, other companies have tried and failed to

---

[1] The facts summarized below are drawn from the pleadings, documents incorporated into the pleadings by reference, and public records of which the Court may take judicial notice.  *See Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (listing documents properly considered on a motion to dismiss).

formulate phosphate-based aerial fire-retardant systems, and even minor changes to the formulation can impact whether it passes or fails the qualification process.

Davis, a California resident, served as Perimeter's Vice President of Operations and, by virtue of that position, had access to Perimeter's alleged trade secrets regarding the manufacture and formulations of its phosphate-based fire-retardant systems, including the PHOS-CHEK® products, the components and suppliers for Perimeter's products, and analysis and testing conducted by Perimeter.

On June 11, 2018, Davis entered into a confidentiality agreement with Perimeter in which he acknowledged his access to Perimeter's trade secrets and confidential information by virtue of his employment and agreed to keep that information confidential. The confidentiality agreement contained the following choice of law and forum selection provision:

> (b) This Agreement shall be binding upon and enforceable against my heirs and legal representatives and the assignees of any idea, invention and discovery conceived or made by me. Further, this Agreement shall be construed and interpreted in accordance with and governed by the laws of the State of Missouri, without regard to conflict of laws provisions. I agree that the Circuit Court of St. Louis County in the State of Missouri is an appropriate venue for any action brought to enforce the provisions of this Agreement and consent to that court's exercise of jurisdiction over my person.

ECF No. 17-1, Am. Compl., Ex. A at § VI(b).

Davis's employment with Perimeter ceased on January 8, 2021, and he entered into a severance agreement with Perimeter in which he agreed that in exchange for severance pay, he would continue to abide by the above-noted confidentiality agreement

and that he would separately agree not to compete with Perimeter for a period of one year.[2]  ECF No. 18, Am. Compl., Ex. C.

**Davis's Employment with Fortress**

More than one year later, on January 10, 2022, Perimeter's competitor, California-based Fortress, announced that it had hired Davis as Chief Manufacturing and Supply Chain Officer.  As part of its announcement, Fortress touted Davis's specialized knowledge of aerial fire retardants.

On January 14, 2022, Perimeter sent letters to Davis and Fortress, attaching the above-noted confidentiality and severance agreements, and reiterating Davis's obligations to neither divulge trade secrets or confidential information, nor use such information for Fortress's benefit.  Perimeter did not receive a response to either letter.

According to Perimeter, Fortress previously offered a magnesium chloride-based aerial fire-retardant system to the U.S. Forest System.  However, on March 22, 2024, the U.S. Forest Service informed Fortress that it was unable to offer Fortress a contract due to the safety concerns caused by Fortress' magnesium chloride-based retardants.  As part of a press release dated March 25, 2024, Fortress indicated that its magnesium chloride-based aerial fire-retardant formulation would not be utilized for the foreseeable future and that it was working to achieve full qualification of a proprietary, non-magnesium chloride based retardant.

---

[2]  Perimeter has not alleged that Davis breached the non-competition provision.

Sometime after Fortress hired Davis, a former Perimeter engineer who built Perimeter's manufacturing line for its phosphate-based aerial fire-retardant system informed Perimeter that Davis had asked him (the engineer) to build a similar manufacturing facility for Fortress. Perimeter further alleges "[o]n information and belief, Davis has attempted to recruit Perimeter Solutions' employees to work at Fortress."[3] ECF No. 14, Am. Compl. ¶ 64.

Perimeter alleges that Fortress is attempting to gain approval from the U.S. Forest Service for a new phosphate-based aerial fire-retardant system, and that "on information and belief," Fortress only recently began work on developing such a system. Perimeter summarizes its theory of misappropriation as follows:

> Based on Perimeter Solutions' experience with formulating and manufacturing phosphate-based aerial fire retardant systems, the failure of others to successfully formulate such products, the difficulty of getting a product added to the QPL, Fortress' own admission that it is developing a non-magnesium chloride based retardant, and Davis'[s] knowledge of phosphate-based aerial fire retardant systems acquired from Perimeter Solutions, Perimeter Solutions believes that Davis has provided Perimeter Solutions' Confidential Information and Trade Secrets to allow his new employer, Fortress, to short-cut the development process for a phosphate-based aerial fire retardant system.

*Id.* ¶ 69.

**Perimeter's Lawsuit Against Fortress in the Eastern District of California**

On May 1, 2024, the same day it filed the instant lawsuit in this Court, Perimeter filed a complaint against Fortress in the Eastern District of California. *See Perimeter*

---

[3] Perimeter does not allege that Davis has breached any non-solicitation provision of his employment agreements.

*Solutions, L.P. v. Fortress North America, L.L.C.*, Case No. 2:24-cv-01276-DAD-CSK (E.D. Cal.) (hereinafter, the "California Litigation"),[4] alleging trade secret misappropriation under the Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b), and the Missouri and California Uniform Trade Secrets Act ("UTSA"), Mo. Rev. Stat. §§ 417.450-417.467 and Cal. Civ. Code § 3426, respectively.  *See* ECF No. 25-2, Def.'s Ex. A.  Davis is not named as a defendant in the California litigation.

Perimeter's complaint in the California Litigation alleges that Fortress misappropriated Perimeter's trade secrets by receiving and using its protected information "while knowing or having reason to know that it was derived from or through a person (Davis) who owed a duty to Perimeter Solutions to maintain the secrecy of Perimeter's Trade Secrets," and that "Fortress and Davis have used perimeter Solutions' Trade Secrets in the manufacture and sale or products to compete with Perimeter's products . . . ."  *Id.* ¶¶ 84, 96, 97.  Perimeter seeks actual and punitive damages as well as injunctive relief to prevent the further misappropriation of its trade secrets and confidential information.

**Perimeter's Lawsuit in this Court and Davis's Motion to Dismiss**

In its amended complaint before this Court, Perimeter names Davis as the only Defendant, and asserts that Davis "has breached or will inevitably breach the non-disclosure provisions in the Confidentiality Agreement by nature of his employment at

---

[4]   References to filings in the California Litigation will be designated as "California Litigation, ECF No. ___."

Fortress," and that Davis has violated the DTSA and the Missouri UTSA by disclosing Perimeter's trade secrets to Fortress and because "Davis and Fortress have used Perimeter Solutions' Trade Secrets in the manufacture and sale of products that compete with Perimeter Solutions' product." ECF No. 14, Am. Compl. ¶¶ 80, 91, 104.  As in the California Litigation, Perimeter seeks actual and punitive damages as well as injunctive relief to prevent the further misappropriation of its trade secrets and confidential information.

In his motion currently before this Court, Davis argues that the complaint should be dismissed because Perimeter has violated the rule against claim-splitting by improperly and unfairly splitting its claims based on the same operative facts into two duplicative lawsuits.  Alternatively, Davis argues that the complaint should be dismissed for failure to state a claim because Perimeter fails to sufficiently identify its trade secrets and because Perimeter bases its allegations of breach and misappropriation on pure speculation and on the legally disfavored inevitable disclosure doctrine.[5]

Perimeter opposes the motion, arguing that the claim-splitting doctrine does not apply in light of the differences between the lawsuits regarding identity of parties and

---

[5] The Court takes judicial notice that Fortress, represented by the same attorneys as Davis here, has filed a substantially similar (and in some instances, identical) motion to dismiss Perimeter's complaint in the California Litigation for failure to state a claim. Fortress has not sought to dismiss the California Litigation on claim-splitting grounds. *See* California Litigation, ECF No. 19 (filed June 25, 2024).  As of the date of this Memorandum and Order, the Eastern District of California has not ruled on Fortress's motion.  However, avoiding the risk of conflicting rulings in this respect is another reason to dismiss this lawsuit based on the claim-splitting doctrine and to allow Perimeter to seek to pursue its claims based on these same operative facts in a single proceeding.

causes of action. Further, Perimeter argues that being required to litigate its claims against Davis in California would effectively deprive Perimeter its contractual choice that Missouri law govern its contract claims. As to Davis's alternative motion, Perimeter argues that it has plausibly pled trade secret misappropriation and breach of contract by identifying its trade secrets and by pleading that Davis had access to these trade secrets during his employment with Perimeter, that Davis solicited a Perimeter's former engineer to help build a similar manufacturing facility for Fortress, and that, based on the circumstances, Perimeter believes that Davis has or inevitably will disclose Perimeter's trade secrets and confidential information to help Fortress build a competing system.

## DISCUSSION

### Motion to Dismiss Standard

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Courts may consider motions to dismiss based on defenses such as improper claim splitting or the related doctrine of claim preclusion when "the identity of the two actions can be determined from the face of the petition itself," including "public records and materials embraced by the complaint and materials attached to the complaint." *C.H.*

*Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012) (internal citations omitted). In considering a motion to dismiss based on these doctrines, the Court must "accept the non-moving party's factual allegations as true and construe all reasonable inferences in favor of the nonmovant." *Schaefer v. Putnam*, 827 F.3d 766, 769 (8th Cir. 2016) (citation omitted).

**Claim Splitting Doctrine**

As an initial matter, the Court must decide what law applies to Davis's arguments based on improper claim splitting. Both parties cite Missouri law, in addition to federal common law, to discuss the standards applicable to the rule against claim splitting.

The Court agrees that federal common law is relevant to the issue. The claim splitting doctrine is a creature of federal common law, and the Eighth Circuit cases applying the doctrine rely on federal common law standards. *See, e.g.*, *Kezhaya v. City of Belle Plaine, Minnesota*, 78 F.4th 1045, 1050 (8th Cir. 2023).

Further, as discussed below, claim splitting is closely related to the doctrine of claim preclusion, borrowing its principles from that doctrine. Under the claim preclusion doctrine, "[t]he preclusive effect of a federal-court judgment is determined by federal common law[, and] for judgments in federal-question cases . . . [,] federal courts participate in developing 'uniform federal rules' of res judicata, which [the Supreme Court] has ultimate authority to determine and declare." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (cleaned up and citation omitted). Davis has only alleged improper claim splitting in the case before this Court, and the litigation he alleges to have a preclusive effect (the California Litigation) is proceeding in the Eastern District of California based

- 9 -

on that court's federal-question jurisdiction over Plaintiff's claim under the DTSA, and supplemental jurisdiction over the state-law claims under the UTSA. *See* California Litigation, ECF No. 1. Therefore, federal common law would govern even if the Court were to apply claim preclusion standards for the choice of law.[6]

Turning then to the substance of the claim splitting analysis, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). The Eighth Circuit recognizes the rule against claim splitting or duplicative litigation in federal courts. *See Kezhaya*, 78 F.4th at 1050 (recognizing the rule and citing standards used by the Second Circuit in *Curtis*, 226 F.3d at 138-40 and the Seventh Circuit in *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021)).

The rule against claim splitting is distinct from but related to the doctrine of res judicata or claim preclusion, and like that doctrine, "seeks to promote judicial economy and to protect parties from vexatious and duplicative litigation over the same subject

---

[6] Further, even if the California Litigation were proceeding on diversity jurisdiction, Missouri law would not govern under claim preclusion principles. If any state law were to govern in that instance, it would be California law. *See, e.g.*, *Dunne v. Res. Converting, LLC*, 991 F.3d 931, 942 (8th Cir. 2021) ("The law of the forum that rendered the first judgment controls the claim preclusion analysis," and "when a federal court sitting in diversity renders the first judgment, we apply the law of the forum state of that court."); *St. Jude Med. S.C., Inc. v. Cormier*, 745 F.3d 325, 327 (8th Cir. 2014) (noting that Florida law applied to res judicata analysis where Florida was the forum that rendered the judgment alleged to have preclusive effect, even though the applicable employment agreement contained a Minnesota choice-of-law provision).

matter. *Kezhaya*, 78 F.4th at 1050. But while the rule against claim splitting relies to some extent on claim preclusion principles, the requirements of claim splitting "are not quite as stringent" as those of claim preclusion and do not require entry of a final judgment in the first action. *Scholz*, 18 F.4th at 952. Rather, a dismissal on claim splitting grounds "has been viewed as a matter of docket management, reviewed for abuse of discretion, even in decisions that with some exaggeration describe the theory 'as an aspect of res judicata.'" *Id.* at 950 (citing 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4406 (3d ed.)); *see also Curtis*, 226 F.3d at 138 ("The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion.").

In determining whether to dismiss a case for improper claim splitting, the Court considers "whether the parties to the actions are the same and whether the claims arise from the same nucleus of operative fact." *Kezhaya*, 78 F.4th at 1050.

    i.    <u>Identity of Claims</u>

"[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (applying federal common law). In other words, for claim splitting to apply, the legal theories for the claims in each case need not be identical as long as they are based same transaction or

series of connected transactions.[7] *See Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990) (adopting the position of the Restatement (Second) of Judgments); *see also* Restatement (Second) of Judgments § 24 (1982) (Am. L. Inst. 1982)..

Perimeter's claims in this lawsuit and in the California Litigation arise from the same nucleus of operative facts—namely, Davis's alleged misappropriation of Perimeter's trade secrets and confidential information after being hired by Fortress. As noted above, the complaints in both cases are largely identical. Fortress is not accused of any independent wrongdoing except as an employer of Davis; likewise, Davis is not alleged to have committed any wrongdoing except as an employee of Fortress. *Cf. St. Jude*, 745 F.3d at 329 (distinguishing for preclusion purposes between the extent to which plaintiff's claims arose from defendant's acts as an employee of competitor (in which case, as here, they were same as and precluded by prior claims against competitor), as opposed to defendant's acts while still employed by plaintiff, when competitor tortiously interfered with plaintiff's employment contract (in which case the claims were independent)).

In support of its argument that the claims here are independent, Perimeter relies on *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 758 F.3d 1051 (8th Cir. 2014).

---

[7] For this reason, the Court also rejects Perimeter's alternative argument that "to the extent the Court is inclined to find that Perimeter's trade secret claims against Davis and Fortress should be resolved in a single lawsuit, the Court should still not dismiss Perimeter's breach of contract claim against Davis because it is a different cause of action." ECF No. 30 at 15. The difference in legal theory is irrelevant as long as the claims are based on the same nucleus of operative facts. *Lane*, 899 F.2d at 744.

Such reliance is misplaced. *Hallmark* did not address any issue of preclusion but instead considered whether a plaintiff was improperly awarded double recovery for a single injury. *Hallmark*, 758 F.3d at 1057. Further, as Davis correctly notes, *Hallmark* did not involve a single transaction of a former employee disclosing trade secrets to his new employer; rather, it involved two transactions—"a consulting firm's (company 1) disclosure of Hallmark's trade secrets to a private equity firm (company 2) (the first 'transaction'), who in turn used the trade secrets to purchase and manage a competitor greeting card company (company 3) (the second 'transaction')." ECF No. 34 at 9 (correctly summarizing *Hallmark*, 758 F.3d at 1054-57).

By contrast, Perimeter's claims are limited to the first transaction because they are based on a disclosure between only two defendants. And the Eighth Circuit in *Hallmark* explicitly clarified that "the transmission of trade secrets between two potential defendants creates a single injury, and a plaintiff may not seek damages both for the dissemination of its trade secrets and for the concomitant acquisition of those trade secrets in the same transaction." *Hallmark*, 758 F.3d at 1057. Thus, one defendant's transmission of trade secrets to a second defendant, and the second defendant's receipt of those same trade secrets, "[gives] rise to a single injury." *Id.*

Such is the very scenario Perimeter alleges in its two lawsuits here. Perimeter's claims against both defendants here are based entirely on Davis's alleged wrongdoing, for which Perimeter seeks to hold Fortress liable vicariously, as Davis's employer, or, at most, as Davis's co-conspirator because the two defendants allegedly acted in concert to misuse the trade secrets. *See* 18 U.S.C. § 1839(5) (defining "misappropriation" under the

DTSA as the disclosure or use of a trade secret by someone who acquired the trade secret by improper means or who knew or had reason to know someone else acquired it by improper means).

Indeed, Perimeter's complaints in both cases allege that Davis and Fortress, together, used Perimeter's trade secrets, and Perimeter seeks to enjoin both Davis and Fortress from acting in concert to continue to do so.  These claims arise from the same nucleus of operative facts and should be litigated together.  *See, e.g.*, *Criterion 508 Sols., Inc. v. Lockheed Martin Servs., Inc.*, 806 F. Supp. 2d 1078, 1097 (S.D. Iowa 2009) (applying Restatement (Second) of Judgments to hold that claims against a former employee who allegedly joined competitor and disclosed trade secrets to competitor, and against the competitor who allegedly used such trade secrets in its own business, were based on the same nucleus of operative facts); *Aviation Software, Inc. v. United States*, 101 Fed. Cl. 656, 663 (Fed. Cl. 2011) (holding that claims against United States for use of infringed copyrights licensed from plaintiff's competitor, were precluded by plaintiff's prior claims for copyright infringement against both the competitor and the former employee who originally disclosed copyrighted information to the competitor).

    ii.    <u>Identity of the Parties</u>

Under federal common law, preclusion requires both suits to have the same parties "or those in privity with them."  *Elbert*, 903 F.3d at 782; *see also Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 631 (5th Cir. 2023) ("In the absence of total identity of the parties for claim splitting, privity is required.").  Although "[t]he term 'privity' once referred to specific substantive legal relationships," in this context, it is "merely a word

- 14 -

used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Elbert*, 903 F.3d at 782 (citations omitted).   "Privity is a question of fact, determined case by case." *St. Jude Med. S.C., Inc.*, 745 F.3d at 328.

The Restatement (Second) of Judgments, which the Eighth Circuit has adopted, provides:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:
>
> (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
>
> (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

Restatement (Second) of Judgments § 51 (Am. L. Inst. 1982)

The rationale for this rule is that the "additional security . . . afforded by rules of vicarious responsibility should not . . . afford the injured person a further option to litigate successively the issues upon which his claim to redress is founded," particularly because the injured party is "ordinarily in a position to sue both obligors in the same action and may justly be expected to do so." *Id.* cmt. b.  Otherwise, "anomalous consequences may result," such as awarding recovery "for conduct that has already been determined not to be wrongful." *Id.*

- 15 -

As discussed above, Perimeter's claims against Fortress are entirely derivative of its claims against Davis. Perimeter's only allegations against Fortress are that Fortress used Davis's information knowing that such was misappropriated. If Davis's information was not misappropriated, Fortress cannot be held liable to Perimeter. Likewise, Perimeter does not assert any wrongdoing by Davis prior to Davis becoming an employee of Fortress. Davis is only alleged to have committed wrongdoing as an agent of Fortress, and Perimeter seeks to hold Fortress liable as a principal or under one of the provisions permitting derivative liability under the DTSA and its state-law counterparts.

In such a circumstance, the Court concludes that the relationship between the defendants is close enough to require Perimeter to bring its claims against them in a single lawsuit. *See, e.g.*, *Elbert*, 903 F.3d at 784 (applying claim preclusion under federal common law and finding "no good reason why [plaintiff] should have a second chance" to add new claims and defendants in a second lawsuit where "[a]ll of his claims arise out of the same police raid, and all of his new claims allege that Detective Gibbs, the defendant in the first action, and the sixteen police officers added in the second, acted together to violate his rights"); *St. Jude*, 745 F.3d at 328-29 (finding privity under Florida law based on derivative liability as between former employee and competitor, for acts committed while employed by competitor); *MGA Ent., Inc. v. Mattel, Inc.*, No. CV 11-01063 DOC RNBX, 2011 WL 5007955, at *4 (C.D. Cal. Oct. 20, 2011) (holding that the parties could not "seriously dispute that that this is a case involving the same parties in privity, given that Eckert is a senior employee of Mattel—a named party in MGA's prior litigation—and Eckert's conduct was the subject of MGA's prior allegations"); *see also*

*DKN Holdings LLC v. Faerber*, 352 P.3d 378, 389 (Cal. 2015) (holding under California law that "[d]erivative liability supporting preclusion has been found between a corporation and its employees . . . and among alleged coconspirators").

      iii.      <u>Effect of the Choice of Law and Forum Selection Clause</u>

Perimeter's final argument against dismissal based on claim splitting is that dismissal would deny Perimeter its choice of law with respect to its contract claim against Davis. As noted above, the confidentiality agreement at issue contains a forum selection and choice of law provision requiring that it be "governed by the laws of the State of Missouri, without regard to conflict of laws provisions," and agreeing that "the Circuit Court of St. Louis County in the State of Missouri is an appropriate venue for any action brought to enforce" the agreement. ECF No. 17-1, Am. Compl., Ex. A at § VI(b).

Perimeter argues that this choice of law provision favors maintaining this litigation in Missouri. However, Perimeter has not argued, let alone demonstrated, that there is any difference between Missouri and California law with respect to the contractual cause of action here.[8] And the federal court in California is well equipped to determine the choice of law issue and to fairly adjudicate all of causes of action Perimeter alleges arise out of these operative facts, based upon the applicable law. Thus, to the extent relevant,

---

[8] Although the parties assert that California does not enforce covenants not to compete, *see* Cal. Labor Code § 925, Perimeter's cause of action is not based on its non-competition provision. And no party has suggested or demonstrated that California refuses to enforce confidentiality provisions of the type giving rise to the contract claim here.

- 17 -

Perimeter will not be unfairly prejudiced by being required to litigate its contract claim in the California Litigation.

With respect to the forum selection provision, Perimeter does not dispute that provision's reference ot the Circuit Court of St. Louis County is a permissive, rather than mandatory, forum selection clause. *See Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (noting that the absence of terms that "might suggest exclusivity" indicates that a clause is permissive). As such, an action on the contract "may be maintained in other reasonably convenient forums where personal jurisdiction exists," *id.* at 1063, which the parties do not dispute includes the Eastern District of California.

In short, the Court finds that the identity of the claims and parties, and the desire to promote judicial economy and to protect the parties from duplicative litigation over the same subject matter, together warrant the dismissal of this action without prejudice to Perimeter pursuing its claims in a single proceeding.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. 24. The dismissal is without prejudice to Plaintiff seeking to pursue its claims against Defendant in its case pending in the Eastern District of California.

A separate Order of Dismissal will accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2024.